Sealed

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**


Certified to be a true and
correct copy of the document on file
Angela E. Noble, Clerk,
U.S. District Court
Southern District of Florida
By_____ Deputy Clerk
Date_____

SECURITIES AND EXCHANGE COMMISSION,    :
    :
    **Plaintiff,**    :
    :
v.    :
    :   **CASE NO.**
**BKCOIN MANAGEMENT, LLC and**    :
**MIN WOO KANG a/k/a "KEVIN" KANG,**    :
    :
    **Defendants, and**    :
    :
**BKCOIN CAPITAL, LP,**    :
**BK OFFSHORE FUND, LTD.,**    :
**BKCOIN MULTI-STRATEGY**    :
**MASTER FUND, LTD.,**    :
**BKCOIN MULTI-STRATEGY FUND, LP,**    :
**BKCOIN MULTI-STRATEGY FUND LTD., AND**    :
**BISON DIGITAL LLC,**    :
    :
    **Relief Defendants.**    :
    :


FILED BY_____ D.C.

FEB 23 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

### I. SUMMARY

1.    The Commission brings this action to prevent further fraud and misappropriation

of investor money by BKCoin Management, LLC ("BKCoin"), an exempt reporting investment

adviser, and one of its two managing members, Min Woo Kang a/k/a "Kevin" Kang ("Kang")

(collectively, "Defendants"). From at least October 2018 through September 2022 (the "Relevant

Period"), BKCoin served as the investment adviser to the following five private funds formed to

generate profits primarily through investments in crypto assets:[1] BKCoin Capital, LP (the "Legacy

---

[1] Crypto assets are unique digital assets maintained on a cryptographically-secured blockchain. A blockchain or
distributed ledger is a peer-to-peer database spread across a network of computers that records all transactions in
theoretically unchangeable, digitally recorded data packages. The system relies on cryptographic techniques for

Fund"), BK Offshore Fund, Ltd. (the "Offshore Fund"), and three "Multi-Strategy" funds: BKCoin Multi-Strategy Master Fund, Ltd., and its two feeder funds, BKCoin Multi-Strategy Fund, LP and BKCoin Multi-Strategy Fund Ltd. (the "Multi-Strategy Funds") (all funds collectively, the "BKCoin Funds"). During that time, BKCoin also managed separately managed accounts ("SMAs") for certain clients.

2. During the Relevant Period, Defendants raised nearly $100 million from at least 55 investors, who invested in one or more of the five BKCoin Funds (approximately $94.5 million), or through an SMA managed by BKCoin (approximately $5 million). Defendants assured investors and prospective investors in fund offering documents, investor agreements and other communications that their funds would be used primarily to trade in crypto assets, and represented that BKCoin would generate returns for investors in the BKCoin Funds or SMAs through specific investment strategies focusing on crypto assets. BKCoin also sent marketing presentations to at least 18 investors or prospective investors claiming that BKCoin or one of the Multi-Strategy Funds received a US opinion from a "top four auditor."

3. These statements were false or materially misleading. In fact, during the Relevant Period, Defendants disregarded the BKCoin Funds' structures, commingled investor assets, and used over $3.6 million to make Ponzi-like payments to fund investors. Relief defendant Bison Digital LLC ("Bison Digital"), a sixth crypto fund that had no investors except for Kang and the other managing member of BKCoin, received $12 million from BKCoin and the BKCoin Funds for no apparent or legitimate reason. Kang also used BKCoin Funds' and SMA investors' funds for personal use, misappropriating at least $371,000 of investor funds to pay for vacations, tickets

secure recording of transactions. Crypto tokens may be traded cn crypto asset trading platforms in exchange for other crypto assets or fiat currency (legal tender issued by a country).

to sporting events, trade crypto assets in his personal accounts, and to purchase an apartment in New York City. Contrary to its claims of having an opinion from a "top four auditor," neither BKCoin nor any of the BKCoin Funds have received an opinion from any audit firm.

4. Kang attempted to conceal from investors Defendants' unauthorized use of funds, by sending altered documents with inflated bank account balances to the third-party fund administrator for the Multi-Strategy Funds. The administrator incorporated this false information into the performance reports that were sent to investors.

5. By October 2022, however, Defendants' fraudulent scheme started to collapse. BKCoin suspended Kang from employment and notified investors that it was suspending redemption requests and capital withdrawals from the BKCoin Funds. On October 28, 2022, BKCoin filed an Emergency Petition for Appointment of Receiver in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County Florida, seeking appointment of a receiver over the Multi-Strategy Funds, which was granted and subsequently expanded to include the Legacy Fund and the Offshore Fund.[2] Of the nearly $100 million that BKCoin raised from investors, tens of millions of dollars are unaccounted for.

6. By engaging in the conduct set forth in this Complaint, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

7. Unless enjoined, Defendants will continue to violate the federal securities laws. Among other relief, the Commission seeks permanent injunctions, disgorgement with prejudgment

---

[2] *See BKCoin Management LLC et al. v. BKCoin Multi-Strategy Fund Ltd. et al.*, Case No. 2022-020760-CA-01 (Fla. 11th Circ. Ct. 2022).

interest, and civil penalties against Defendants. The Commission also seeks an order against Kang: (i) enjoining Kang from participating in the offer or sale of securities, including crypto asset securities, except for transactions in his own personal account; and (ii) imposing an officer and director bar. Additionally, the Commission seeks disgorgement and prejudgment interest against Relief Defendants. To protect investors and prevent further dissipation of assets, the Commission also seeks asset freezes and other emergency relief against Defendants and Relief Defendants.

## II. DEFENDANTS AND RELIEF DEFENDANTS

### A.    Defendants

8.    Kang, age 33, resides in New York, New York. Kang co-founded BKCoin and is one of its two managing members. In October 2022, BKCoin suspended Kang from employment. Kang is a Chartered Financial Analyst, however, he is not registered with the Commission and holds no securities licenses.

9.    BKCoin is a Delaware limited liability company with its principal place of business in Miami, Florida. Since November 2018, BKCoin has filed reports with the Commission as an exempt reporting adviser. In its most recent Form ADV filing with the Commission on March 29, 2022, BKCoin reported assets under management of approximately $70 million. During at least the Relevant Period, BKCoin served as the investment adviser to the BKCoin Funds and SMAs managed for individual and institutional investors.

### B.    Relief Defendants

10.    The Legacy Fund, formed in 2018, is an unregistered fund organized as a Delaware limited partnership. The Legacy Fund was formed primarily for the purpose of investing in crypto assets.

4

11.     The Offshore Fund, formed in 2019, is an unregistered fund organized under the laws of the British Virgin Islands. The Offshore Fund was formed primarily for the purpose of investing in crypto assets.

12.     BKCoin Multi-Strategy Master Fund Ltd. ("Master Fund"), formed in 2022, is an unregistered fund organized under the laws of the British Virgin Islands. It serves as the master fund in a master-feeder structure, with BKCoin Multi-Strategy Fund LP and BKCoin Multi-Strategy Fund Ltd. as the feeder funds. The Multi-Strategy Master Fund was formed for the purpose of investing in crypto assets.

13.     BKCoin Multi-Strategy Fund LP, formed in 2021, is an unregistered fund organized as a Delaware limited partnership, and is the domestic feeder fund for the Master Fund.

14.     BKCoin Multi-Strategy Fund Ltd., formed in 2022, is an unregistered fund organized under the laws of the British Virgin Islands, and is the offshore feeder fund for the Master Fund.

15.     Bison Digital, LLC formed in 2019, is an unregistered fund organized as a Wyoming limited liability company. Kang co-founded Bison Digital, LLC and is one of its two managing members. Bison Digital, LLC has no other investors.

### III. JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), 22(a), and 22(c) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), 77v(a), and 77v(c)]; Sections 21(d), 27(a), and 27(b) of the Exchange Act [15 U.S.C. §§ 78u(d), 78aa(a), and 78aa(b)]; and Sections 209(d), 214(a), and 214(b) of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-14(a), and 80b-14(b)].

17.     The Court has personal jurisdiction over the Defendants and venue is proper in the

Southern District of Florida because: (a) many of Defendants' acts and transactions constituting

violations of the Securities Act, the Exchange Act, and the Advisers Act occurred in this District;

(b) BKCoin's principal place of business is in this District; and (c) some of the BKCoin Funds'

investors reside in this District.

18.     In connection with the conduct alleged in this Complaint, Defendants, directly and

indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate

commerce, the means or instruments of transportation and communication in interstate commerce,

and the mails.

## IV. FACTUAL ALLEGATIONS

### A.     Defendants Raised Nearly $100 Million From Investors Who Invested in BKCoin Funds or Through SMAs

19.     Kang co-founded BKCoin in 2018, ostensibly for advising domestic and offshore

investment funds focused primarily on investing in crypto assets. Over the course of the next four

years, Kang and others formed the five BKCoin Funds, which Defendants offered to investors.

BKCoin serves as the investment adviser to the five BKCoin Funds. BKCoin also provided

investment advisory services to individual and institutional investors who opted to invest in crypto

assets through SMAs.

20.     The Legacy Fund, formed by Kang and others in March 2018, was the first private

fund for which BKCoin served as General Partner and investment adviser. According to its

website during the Relevant Period, the Legacy Fund invests primarily in crypto assets and its

investment strategy was to pursue a "market neutral strategy [that] exploits price inefficiencies and

volatility within cryptocurrency markets and digital asset markets by applying proprietary

algorithms to our statistical arbitrage and long/short investment strategies."

6

21.     In 2019, Kang and others formed the Offshore Fund, primarily for the purpose of investing in crypto assets, and for which BKCoin served as the investment adviser. A Term Sheet distributed to investors for the Offshore Fund states that its investment objective and strategy is to "deliver uncorrelated, absolute returns of 10-15% annually by using statistical arbitrage strategy" as well as "leverage" as part of the investment strategy.

22.     Kang and others formed the Multi-Strategy Funds in 2021 and 2022, also for the purpose of investing in crypto assets utilizing various trading strategies. According to a marketing document provided to investors and prospective investors, the Multi-Strategy Funds were "designed to give investors returns across a broad spectrum of strategies" involving crypto assets.

23.     During the Relevant Period, BKCoin raised approximately $100 million from more than 55 investors who invested in the BKCoin Funds or through SMAs. Approximately $94.5 million of these funds were invested in the Legacy Fund ($67.87 million), the Multi-Strategy Funds ($18.7 million), and the Offshore Fund ($7.94 million). At least seven investors invested approximately $5 million into SMAs managed by BKCoin.

24.     During the Relevant Period, according to fund offering documents, BKCoin charged a two percent and six percent yearly advisory fee for the investment advisory services it provided to the Legacy Fund and Offshore Fund, respectively.

25.     The interests sold by the BKCoin Funds are securities within the meaning of Section 2(a)(1) of the Securities Act, Section 3(a)(10) of the Exchange Act, and Section 202(a)(18) of the Advisers Act [15 U.S.C. §§ 77b(a)(1), 78c(a)(10), and 80b-2(a)(18)].

**B.     Defendants Made Material Misrepresentations and Omissions to Investors in Connection with the Offering of BKCoin Fund Investments and SMAs**

*(1) Defendants' Misrepresentations and Omissions About the Use of Funds*

26.     In BKCoin Funds' offering documents and limited partnership agreements with investors, BKCoin represented to investors and prospective investors that it would use investor funds for authorized purposes, namely investments in crypto assets.

27.     For example, the limited partnership agreements for the Legacy Fund and BKCoin Multi-Strategy Fund LP, dated August 28, 2020 and March 3, 2022, respectively, authorize BKCoin to, among other things, "acquire, invest in, hold, pledge, manage, sell, transfer, operate, or otherwise deal in or with the Portfolio Investments," a term defined to include crypto assets.

28.     During the Relevant Period, BKCoin Multi-Strategy Fund Ltd. distributed to prospective investors and investors a private placement memorandum dated March 3, 2022, that stated its investment objective was to "generate superior risk adjusted returns through a variety of innovative alpha-generating investment strategies, which are, in each case, related to the digital asset space."

29.     Similarly, the investment agreements with the SMA holders authorize BKCoin "to supervise and direct the investment and reinvestment of" crypto assets, subject to specific investment guidelines.

30.     Further, on September 7 and October 14, 2021, Kang represented to at least one Legacy Fund investor that investor funds would be used to trade in crypto assets.

31.     Based on these documents and statements, BKCoin and Kang led investors to believe that BKCoin and the BKCoin Funds would use investors' money to trade in crypto assets in order to return profits in which investors would share, and that BKCoin would be entitled to certain management fees.

8

32.     Contrary to these representations about the use of investor funds, Defendants disregarded BKCoin Funds' structures, comingled millions of investors' funds among the BKCoin Funds, and misappropriated investors' funds for unauthorized purposes. Kang misappropriated at least $371,000 of investor funds to finance his lavish lifestyle and trade in crypto assets for his own benefit, as described in paragraphs 41 to 45 below. Furthermore, Defendants looted substantially all investor deposits for the Multi-Strategy Funds, transferring millions to BKCoin's and the Offshore Fund's bank accounts. Defendants then used at least $3.6 million of the funds transferred from the Multi-Strategy Funds to make Ponzi-like distributions to investors in the Legacy Fund and an SMA client, as described in paragraphs 46 to 49 below.

### *(2) BKCoin Falsely Stated to Investors That It, or one of the Multi-Strategy Funds, Had Received an Opinion from a "Top Four" Auditing Firm*

33.     BKCoin also materially misrepresented to certain investors that BKCoin, or one of the Multi-Strategy Funds, had received an opinion from a "top four" auditing firm. In marketing presentations delivered to certain investors in the Multi-Strategy Funds, BKCoin knowingly represented that it was "one of the only firms with a US opinion from a top four auditor."

34.     For example, on May 23, 2022, an investment relations professional from BKCoin emailed an investor and copied Kang with "some recent updates to our marketing materials[.]" Attached to the email were two marketing documents that stated BKCoin or one of the Multi-Strategy Funds "is also one of the only firms with a US opinion from a top four auditor . . .[.]"

35.     On May 24, 2022, an investment relations professional from BKCoin emailed a prospective investor (and also copied Kang) two "updated marketing documents" that stated BKCoin or one of the Multi-Strategy Funds "is also one of the only firms with a US opinion from a top four auditor . . .[.]" A little over a month later on June 30, 2022, the prospective investor deposited $1.3 million in a Multi-Strategy Funds account.

9

36. BKCoin emailed versions of one or both of these two "marketing documents" to at least 18 additional prospective investors of the Multi-Strategy Funds. Kang was copied on 11 of those emails and also sent several of those emails to prospective investors.

37. Contrary to this representation, at no time did BKCoin, or any of the BKCoin Funds (including the Multi-Strategy Funds), receive an opinion from a top four auditor, or any other auditor.

38. All of the misrepresentations and omissions about the use of funds and the audit opinion, individually and in the aggregate, are material. There is a substantial likelihood that a reasonable investor in the BKCoin Funds would consider the misrepresented facts and omitted information regarding how their money would be invested, the safety of those investments, and whether BKCoin or the Multi-Strategy Funds had received an audit opinion, to be important, and/or the disclosure of the omitted facts or accurate information would alter the "total mix" of information available to investors.

## C. Defendants' Misappropriation and Misuse of Investor Funds, and Kang's Efforts to Conceal His Misconduct

39. During the Relevant Period, Kang had access to BKCoin's and the BKCoin Funds' assets. Kang had access to and authority over domestic and, on information and belief, offshore bank accounts for BKCoin and the BKCoin Funds, and over crypto asset trading accounts maintained with at least nine crypto asset trading platforms. Kang had access to and authority over certain bank and crypto asset trading accounts held by BKCoin or the BKCoin Funds.

40. Despite his obligation to investors as a fiduciary, and representations to investors about the use of investor funds, during the Relevant Period, Kang repeatedly used investor funds for unauthorized and undisclosed purposes. Moreover, Kang tried to conceal his misconduct by altering information used to generate statements sent to investors.

10

### *(1) Kang's Misappropriation of Investor Funds for Personal Use*

41.     During the Relevant Period, Kang knowingly misappropriated at least $371,000 of investor funds for his personal use.

42.     During October 2018, Kang transferred approximately $11,000 of Legacy Fund investor money to his personal account at a crypto asset trading platform.

43.     In April 2021, Kang wired approximately $35,000 from a BKCoin bank account, to a third party in order to rent a vacation house in Montauk, New York. The $35,000 had been sourced from two SMA clients' investments, which were originally deposited into a BKCoin bank account.

44.     From May 2021 through July 2022, Kang also knowingly misappropriated at least $83,000 in investor funds to make payments to a credit card issued to the Legacy Fund. Kang charged personal expenses to the Legacy Fund credit card, including travel to the Caribbean, tickets to sporting events, and fine dining.

45.     In May 2022, Kang purchased a $2.4 million apartment in New York City in the name of the Offshore Fund, partially using investor funds. Specifically, on March 18, 2022, Kang sent a wire transfer in the amount of $242,000, representing the down payment for the apartment, from an Offshore Fund bank account to a boutique law firm in New York that provides services concerning the purchase, sale, and financing of real estate.

11

***(2) Defendants Commingled Fund Assets and Used at Least $3.6 Million of Multi-Strategy Fund Assets to Make Ponzi-Like Payments to Legacy Fund and SMA Investors***

46.     Defendants disregarded the BKCoin Funds' structure and diverted assets between the separate funds. During the Relevant Period, Defendants made 104 transfers worth over $122 million between bank accounts held by the BKCoin Funds and Bison Digital.

47.     For example, between June and July 2022, Defendants diverted $15.6 million of investor deposits for the Multi-Strategy Funds to Offshore Fund and BKCoin bank accounts. The chart below illustrates the movement of investor dollars (shown in green), between the accounts.



48.     As depicted in the chart, Defendants transferred $13.55 million of investor deposits into the Multi-Strategy Funds to an Offshore Fund account. Defendants then transferred $1.65 million of those funds to a Legacy Fund account. Finally, Defendants used those funds to satisfy redemptions for two investors of the Legacy Fund.

49.     Similarly, Kang transferred $2 million of investor deposits into the Multi-Strategy Funds to a BKCoin account, and then immediately paid those funds to an SMA investor.

***(3) Kang Falsified Documents To Conceal the Unauthorized Transfers and Misappropriation***

50.     Kang attempted to conceal his misappropriation and misuse of investor funds by knowingly providing documents with fictitious bank account balances to the third-party fund administrator for the Multi-Strategy Funds.

51.     The documents that Kang provided to the third-party fund administrator overstated the account balances in a bank account held by BKCoin Multi-Strategy Fund, LP by $9.4 million in June 2022, $15.55 million in July 2022, and $15.56 million in August 2022.

52.     The third-party fund administrator incorporated the fictitious bank account balances into the performance reports for June 2022, July 2022 and August 2022 that were delivered to investors in the Multi-Strategy Funds. As a result, these performance reports displayed materially misleading information about the performance of the Multi-Strategy Funds.

### D. **Defendants' Fraudulent Scheme Unravels**

53.     In October 2022, BKCoin suspended Kang from employment. BKCoin sent letters to investors in the BKCoin Funds, informing them that it was suspending the acceptance of additional capital, the determination of Net Asset Value, and redemption payments or capital account withdrawals.

54.     On October 18, 2022, an investor in one of the SMAs managed by BKCoin filed suit against BKCoin, Kang, and others alleging breach of fiduciary duty and aiding and abetting breach of fiduciary duty.[3] On October 28, 2022, BKCoin filed an Emergency Petition for Appointment of Receiver in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida, seeking appointment of a receiver over the Multi-Strategy Funds, which was granted and subsequently expanded to include the Legacy Fund and the Offshore Fund.[4] The temporary receiver appointed in that action reported that the approximate value of all cash and crypto assets recovered as of January 4, 2023 was only $5,725,780.

---

[3] *Canto v. BKCoin Management, LLC et al.*, Case No.: 22-cv-8858 (JPO) (S.D.N.Y. 2022).

[4] *BKCoin Management LLC et al. v. BKCoin Multi-Strategy Fund Ltd. et al.*, Case No. 2022-020760-CA-01 (Fla. 11th Circ. Ct. 2022).

## V.  CLAIMS FOR RELIEF

### COUNT I

#### Violations of Section 17(a)(1) of the Securities Act
(as to Defendants)

55.     The Commission adopts by reference paragraphs 1 through 54 of this Complaint.

56.     Since at least 2018, Defendants, in the offer or sale of securities by use of any means

or instruments of transportation or communication in interstate commerce or by use of the mails,

knowingly or recklessly, directly or indirectly employed devices, schemes, or artifices to defraud.

57.     By reason of the foregoing, Defendants violated and, unless enjoined, are

reasonably likely to continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. §

77q(a)(1)].

### COUNT II

#### Violations of Section 17(a)(2) of the Securities Act
(as to Defendants)

58.     The Commission adopts by reference paragraphs 1 through 54 of this Complaint.

59.     Since at least 2018, Defendants, in the offer or sale of securities by use of any means

or instruments of transportation or communication in interstate commerce or by use of the mails,

directly or indirectly, negligently obtained money or property by means of untrue statements of

material facts and omissions to state material facts necessary in order to make the statements made,

in the light of the circumstances under which they were made, not misleading.

60.     By reason of the foregoing, Defendants violated and, unless enjoined, are

reasonably likely to continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. §

77q(a)(2)].

14

## COUNT III

### Violations of Section 17(a)(3) of the Securities Act
### (as to Defendants)

61.     The Commission adopts by reference paragraphs 1 through 54 of this Complaint.

62.     Since at least 2018, Defendants, in the offer or sale of securities by use of any means

or instruments of transportation or communication in interstate commerce or by use of the mails,

directly or indirectly, negligently engaged in transactions, practices, or courses of business which

have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

63.     By reason of the foregoing, Defendants violated and, unless enjoined, are

reasonably likely to continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. §

77q(a)(3)].

## COUNT IV

### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act
### (as to Defendants)

64.     The Commission adopts by reference paragraphs 1 through 54 of this Complaint.

65.     Since at least 2018, Defendants, directly or indirectly, by the use of any means or

instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices,

schemes or artifices to defraud in connection with the purchase or sale of any security.

66.     By reason of the foregoing, Defendants violated and, unless enjoined, are

reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)],

and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT V

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act
### (as to Defendants)

67.     The Commission adopts by reference paragraphs 1 through 54 of this Complaint.

15

68.     Since at least 2018, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

69.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

### COUNT VI

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act
### (as to Defendants)

70.     The Commission adopts by reference paragraphs 1 through 54 of this Complaint.

71.     Since at least 2018, Defendants, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

72.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

### COUNT VII

### Violations of Section 206(1) of the Advisers Act
### (as to Defendants)

73.     The Commission adopts by reference paragraphs 1 through 54 of this Complaint.

16

74. Since at least 2018, Defendants, for compensation, engaged in the business of directly advising the BKCoin Funds and others, and thus the potential and actual investors in the BKCoin Funds, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. Defendants were therefore "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

75. Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly knowingly or recklessly employed a device, scheme, or artifice to defraud one or more clients or prospective clients.

76. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT VIII

### Violations of Section 206(2) of the Advisers Act
### (as to Defendants)

77. The Commission adopts by reference paragraphs 1 through 54 and 74 of this Complaint.

78. Since at least 2018, Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective clients.

79. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

17

## COUNT IX

### Unjust Enrichment
### (as to Relief Defendants)

80.     The Commission adopts by reference paragraphs 1 through 54 of this Complaint.

81.     The Relief Defendants obtained funds as part, and in furtherance of, the securities

violations alleged above without a legitimate claim to those funds, and under those circumstances

it is not just, equitable or considerable for the Relief Defendants to retain the funds. The Relief

defendants were unjustly enriched.

82.     Relief Defendants should be ordered to disgorge the funds they received as a result

of Defendants' violations of the federal securities laws.

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants

committed the violations alleged, and:

### I.
### Permanent Injunction Against Defendants

Issue a Permanent Injunction restraining and enjoining BKCoin and Kang from violating

Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15

U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and

206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

### II.
### Permanent Conduct-Based Injunction Against Kang

Issue a Permanent Conduct-Based Injunction, restraining and enjoining Kang from,

directly or indirectly, including through any entity he owns or controls, participating in the

issuance, offer, purchase or sale of any securities, including crypto asset securities, except for

transactions in his own personal account.

### III.
### Asset Freeze, Accounting and Repatriation

Issue an order freezing assets of BKCoin, Kang and the Relief Defendants until further notice of this Court, and requiring them to repatriate assets, and further ordering Defendant Kang to provide the Court with a sworn accounting.

### IV.
### Appointment of Receiver

Appoint a receiver over BKCoin and the Relief Defendants.

### V.
### Records Preservation

Issue an order restraining and enjoining BKCoin and Kang and each of their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, any of the books, records, documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to BKCoin and Kang, wherever located and in whatever form, electronic or otherwise, that refer or relate to the acts or courses of conduct alleged in this Complaint, until further Order of this Court.

### VI.
### Disgorgement and Prejudgment Interest

Issue an Order directing BKCoin, Kang, and the Relief Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

19

## VII.
## Civil Penalty

Issue an Order directing BKCoin and Kang to pay civil money penalties pursuant to

Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act

[15 U.S.C. § 78(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C.§ 80b-9(e)].

## III.
## Officer and Director Bar

Issue an Order barring Kang, pursuant to Section 20(e) of the Securities Act [15 U.S.C. §

77t(d)], and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an

officer or director of any company that has a class of securities registered with the Commission

pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports

pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## IX.
## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## X.
## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this

action in order to implement and carry out the terms of all orders and decrees that it may enter, or

to entertain any suitable application or motion by the Commission for additional relief within the

jurisdiction of this Court.

## XI.
## Demand for Jury Trial

The Commission hereby demands a trial by jury on any and all issues in this action so

triable.

20

February 23, 2023

Respectfully submitted,

By: _____

Trial Counsel
Fla. Bar No. 22590
Direct Dial: (305) 982-6301
Email: guerrierp@sec.gov

Alexander H. Charap, Esq.
Senior Counsel
SDFL Special Bar No. A5502711
Direct Dial: (305) 416-6228
Email: charapal@sec.gov

Jeffrey B. Goldberg, Esq.
Counsel
Fla. Bar No. 0118689
Direct Dial (305) 982-6334
Email: goldergj@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4146

21

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida  ☑

|  |  |
|---|---|
| Securities and Exchange Commission <br><br> *Plaintiff(s)* <br><br> v. <br><br><br> BKCoin Management, LLC, et al. <br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. <br> ) <br> ) <br> ) <br> ) <br> ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Min Woo Kang
38 E 37th Street, Ste. 11
New York, New York 10016-3008

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Pascale Guerrier , Esq., Trial Counsel
Securities and Exchange Commission
801 Brickell Ave., Ste 1950, Miami, Florida 33131
Telephone: (305) 982-6301; Email: guerrierp@SEC.GOV

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                    .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida ▼

)
)
)
Securities and Exchange Commission )
)
_____ )
*Plaintiff(s)* )
v. ) Civil Action No.
)
)
)
)
BKCoin Management, LLC, et al. )
_____ )
*Defendant(s)* )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Bison Digital LLC
c/o Registered Agents, Inc. (Registered Agent)
30 N Gould St., Ste R
Sheridan, WY 82801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Pascale Guerrier , Esq., Trial Counsel
Securities and Exchange Commission
801 Brickell Ave., Ste 1950, Miami, Florida 33131
Telephone: (305) 982-6301; Email. guerrierp@SEC.GOV

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                              .

❐ I personally served the summons on the individual at *(place)*

                                                on *(date)*                    ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)*

                                , a person of suitable age and discretion who resides there,

on *(date)*                    , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)*                                    , who is

designated by law to accept service of process on behalf of *(name of organization)*

                                                on *(date)*                    ; or

❐ I returned the summons unexecuted because                                        ; or

❐ Other *(specify):*



My fees are $                    for travel and $                    for services, for a total of $        0.00        .

I declare under penalty of perjury that this information is true.


Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 04/21) FLSD Revised 12/02/2022

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

Securities and Exchange Commission

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pascale Guerrier, Esq., Jeffrey B. Goldberg, Esq., Securities and Exchange Commission
801 Brickell Ave., Ste. 1950, Miami, FL 33131; Telephone: (305) 982-6300

## DEFENDANTS

BKCoin Management, LLC and Min Woo Kang
a/k/a "Kevin" Kang
County of Residence of First Listed Defendant Miami-Dade
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☒ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL PROPERTY** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | **RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| (Excl. Veterans) | | | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 485 Telephone Consumer Protection Act (TCPA) |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | **Other:** | ☐ 465 Other Immigration Actions | | |
| | | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Re-filed (See VI below) | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district *(specify)* | ☐ 6 Multidistrict Litigation Transfer | ☐ 7 Appeal to District Judge from Magistrate Judgment | ☐ 8 Multidistrict Litigation Direct File | ☐ 9 Remanded from Appellate Court |

## VI. RELATED/ RE-FILED CASE(S)

(See instructions): a) Re-filed Case ☐ YES ☒ NO    b) Related Cases ☐ YES ☒ NO

JUDGE:    DOCKET NUMBER:

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 77q(a)(1), 15 U.S.C. § 77q(a)(2), 15 U.S.C. § 78j(b), 15 U.S.C. § 80b-2(a)(11), 15 U.S.C. § 80b-6(1), 15 U.S.C. § 80b-6(2), 17
C.F.R. § 240.10b-5(a), 17 C.F.R. § 240.10b-5(b), 17 C.F.R. § 240.10b-5(c). Violations of federal securities laws
LENGTH OF TRIAL via [14-2] days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ permanent injunction, permanent conduct-based injunction, asset freeze, accounting and repatriation, appointment of receiver, records preservation, disgorgement and prejudgment interest, civil penalty

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

DATE   2/23/2023   SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY: RECEIPT #    AMOUNT    IFP    JUDGE    MAG JUDGE